UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**CHANTHA OUM**
*Plaintiff*

V.                                               CIVIL ACTION NO 11-CV-11663

**WELLS FARGO BANK, N.A., AS TRUSTEE
FOR OPTION ONE MORTGAGE LOAN
TRUST 2007-2, ASSET-BACKED CERTIFICATES,
SERIES 2007-2; SAND CANYON CORPORATION;**
*Defendants*

## OPPOSITION TO DEFENDANT, WELLS FARGO'S, MOTION TO DISMISS AND DEFENDANT, SAND CANYON'S MOTION FOR JUDGMENT ON THE PLEADINGS

Now comes the Plaintiff, Joseph M. Oum, in the above entitled cause and hereby objects to the Defendant's Motion to Dismiss. As grounds set forth the Plaintiff avers that the reasons for dismissal as set forth by the Defendant fail as a matter of law because the Plaintiff's Complaint, when viewed in the light most favorable to the plaintiff and assuming all facts as set forth in the complaint as true, contain "enough facts to state a claim to relief that is plausible on its face". Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Plaintiffs respectfully request that this Honorable Court deny Defendant's Motion to Dismiss for the following reasons as delineated in this memorandum of law.

## FACTS

The Plaintiff avers that the "pertinent facts" as set forth in the Defendant's Memorandum of Law at pages 1-3 omit and mischaracterize the allegations as actually set forth in the Plaintiff's Complaint. The "pertinent facts" as set forth in the Plaintiff's Complaint in reality read as follows:

1

1. On or about December 15, 2006, Plaintiff, Chantha Oum, purchased the Property located at 18 Bourne Street, Lowell, MA in consideration of $187,000.00.

2. On or about December 18, 2006 a Quitclaim Deed was recorded in the Middlesex County North Registry of Deeds in Book 20807 Page 130 granting the Property to the Plaintiff. (Exhibit 1)

3. On or about December 15, 2006, Option One sold a subprime residential real estate loan to the Plaintiff in the amount of $168,300.00. The alleged Lender on the Loan was Option One and the loan consisted of a Promissory Note to Option One secured by a Mortgage to Option One.

4. Based on information and belief, during the underwriting of said Loan, Option One and its agents stated that the Plaintiff earned more income than what she actually earned.

5. During the underwriting of said Loan, Option One and its agents stated that the Fair Market Value of the Property was higher than it actually was.

6. The initial interest rate on the Note was 9.8

7. Option One and its' agents induced the Plaintiff to agree to the Loan by stating that she would be able to refinance the Property to a fixed rate loan at a lower monthly payment prior to the rate hike on January 1, 2009.

8. On or about December 15, 2006 Plaintiff executed an Adjustable Rate Promissory Note and a Mortgage to Option One. The Mortgage was recorded on December 18, 2006 in Book 20807 Page 131 in the Middlesex County North Registry of Deeds ("The Oum Mortgage"). (Exhibit 2)

9. Paragraph 19 of the Mortgage, entitled "Sale of Note; Change of Loan Servicer", provides in pertinent part that even if the loan is transferred to a loan servicer, "the holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder" (ie. Option One)

10. Paragraph 21 of the Mortgage provides in pertinent part that **If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Paragraph 14. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale.** [Emphasis added]

11. The Lender in this case was the only party, pursuant to the plain language of the Mortgage that could invoke the Statutory Power of Sale.

12. On page 6 of the Mortgage, there are lines for the signature of "Witnesses" of the Plaintiff's signature. There is no signature of any "Witnesses" of the signature of the Plaintiff on the Mortgage.

13. The Notary Acknowledgement Clause on page 6 of the Mortgage fails to state how or if Chantha Oum was identified to be the person signing the Mortgage.

14. The Mortgage is not validly acknowledged.

15. On July 27, 2010, an "Assignment of Mortgage" was recorded in the Middlesex County North Registry of Deeds Book 24123 Page 155, purporting to assign the Mortgage from "Sand Canyon Corporation f/k/a Option One" to Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2007-2, Asset-Backed Certificates, Series 2007-2 ("Wells Fargo as Trustee"). (Exhibit 3)

16. There is no assignment of the Oum Mortgage or Note from Option One to Sand Canyon Corporation recorded in the Middlesex County North Registry of Deeds.

17. The ""Assignment of Mortgage" of Mortgage" fails to state that the Note was assigned.

18. The "Assignment of Mortgage" failed to transfer the obligation in which the mortgage secured (ie. The Note).

19. The "Assignment of Mortgage", in effect, disconnected the Mortgage security instrument from the Note and rendered the Mortgage unsecured.

20. The "Assignment of Mortgage" failed to validly transfer the Mortgage and the Note in accordance with Massachusetts Law.

21. There is no valid "Assignment of Mortgage" because the purported "Assignment of Mortgage" failed to assign the obligation the Mortgage secured (ie. the Note).

22. Wells Fargo as Trustee was not a mortgagee or assignee of the mortgagee that could invoke the Statutory Power of Sale pursuant to Massachusetts Law

23. The Assignment was allegedly executed by a Theresa Esposito, as Vice President for Sand Canyon Corporation, witnessed by a Sabrina Wyche and Notarized by a Sonya F. Williams in Duval County Florida.

24. Based on information and belief the signatures of Theresa Esposito, Sabrina Wyche and Sonya F. Williams are not valid and are not duly executed.

25. Theresa Esposito is actually an employee of Lender Processing Services ("LPS") in Jacksonville, FL, not Sand Canyon. The Assignment was prepared, signed and filed by LPS years after the closing date of the Trust.

26. As of the date of the purported Assignment of Mortgage on May 28, 2010, Theresa Esposito, Sabrina Wyche and Sonya F. Williams were not validly authorized to execute assignments on behalf of Sand Canyon.

27. As of the date of the purported Assignment of Mortgage on May 28, 2010, Theresa Esposito, Sabrina Wyche and Sonya F. Williams were not employed by Sand Canyon.

28. As of the date of the purported Assignment of Mortgage on May 28, 2010, Sand Canyon could not authorize assignments on behalf of Option One.

29. Wells Fargo Bank, although purporting to act as Trustee of the alleged Trust that purports to hold the Oum Mortgage, is not qualified as a trust company.

30. Despite the use of the word "Bank" Wells Fargo was not acting as a "bank" in any sense of the word when acting as Trustee of the alleged security claiming to hold the Oum mortgagee.

31. The Option One Mortgage Loan Trust 2007-2, Asset-Backed Certificates, Series 2007-2 is not a valid REMIC.

32. The Oum Mortgage and Note were not validly transferred to the Option One Mortgage Loan Trust 2007-2, Asset-Backed Certificates, Series 2007-2 because the Mortgage and Note were not transferred to it within 90 days of the Trust's creation as required by law.

33. The "Assignment of the Mortgage" is not valid because the assignment failed to assign the Note and was not validly executed by a person with authority to assign the Mortgage and Note.

34. The Assignment of Mortgage is not valid because Sand Canyon did not hold the Oum Mortgage and Note at the time the Assignment of Mortgage was allegedly executed.

35. Fourteen months prior to the May 28, 2010 Assignment of Mortgage, on March 18, 2009, Dale M. Sugimoto, President of Sand Canyon Corporation, executed a sworn affidavit under the penalty of perjury. The affidavit states that as of March 18, 2009, "Sand Canyon does not own any residential real estate mortgages". (Exhibit 4)

36. The Oum Mortgage was a residential real estate mortgage.

37. The Assignment of Mortgage from Sand Canyon to Wells Fargo as Trustee, dated May 28, 2010, is invalid because Sand Canyon did not own the Oum Mortgage or Note at the time the Assignment of Mortgage as per the sworn Affidavit of Mr. Sugimoto on March 18, 2009.

38. As of May 28, 2010, the Mortgage was not validly assigned to the Option One Mortgage Loan Trust 2007-2, Asset-Backed Certificates, Series 2007-2.

39. Defendant, AHMSI never validly held the Oum Mortgage or Note.

40. Defendant, Wells Fargo, never validly held the Oum Mortgage or Note.

41. On September 1, 2010, Wells Fargo as Trustee recorded a filed a Servicemembers' Relief Act Complaint and Order of notice with the Middlesex County Superior Court to foreclose on the Property. (Exhibit 5)

42. Sometime between September 1, 2010 and February 19, 2011, Wells Fargo as Trustee conducted a foreclosure auction on the Oum Property.

43. On February 19, 2011, Dolan Connly sent Plaintiff a "72 Hour Notice To Quit and Vacate Premise" Notice to Plaintiff on behalf of Wells Fargo. The Notice states "Please be advised that this office represents Wells Fargo Bank, N.A. as Trustee for Option One Mortgage Loan Trust 2007-2, Asset-Backed Certificates, Series 2007-2 as the new owner of the property situated at 18 Bourne Street, Unit 2, Lowell, MA". (Exhibit 6)

44. As of the date of the Notice in paragraph 54 a Foreclosure Deed purporting to grant ownership of the Property to Wells Fargo was not recorded in the Middlesex County North Registry of Deeds.

## STANDARD OF REVIEW

On a motion to dismiss, the court "must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences there from." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75,77 (1st Cir. 1999)). Material attached to a complaint, or incorporated by reference, are a part of the pleading itself, and the Court may consider them on a motion to dismiss. Trans-Spec Truck Serv. Caterpillar, 524 F.3d 315, 321 (1st Cir. 2008). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That is "factual allegations must be enough to raise a right to relief above the speculative level, …on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555.

## ARGUMENT

The Defendants argue that the Plaintiffs Complaint fails to state a claim for several reasons, all of which must fail as a matter of law. Contrary to the Plaintiff's complaint, the Defendant states that Wells Fargo held the Oum Mortgage by a valid assignment. The

Assignment purports to transfer the Oum Mortgage from Sand Canyon to Wells Fargo. (Plaintiff's Complaint Exhibit 4). The Mortgage was originally granted to Option One. The Defendants state in their memorandum that Wells Fargo properly foreclosed on the property because Wells Fargo was the proper holder of the Mortgage, Wells Fargo as Trustee was not required to possess the Note, and that the foreclosure on the property was in compliance with Massachusetts Law. Defendant further states that Plaintiff does not have standing to quiet title because Plaintiff fails to allege the she holds legal title. All of these reasons clearly fail.

### A. The Assignment from Sand Canyon is invalid because Sand Canyon did not hold the Mortgage at the time of the Assignment.

The Defendants allegation that Wells Fargo was the proper holder of the mortgage is false because there is no assignment from Option One to Sand Canyon, the assignment failed to assign the Note, and the assignment from Sand Canyon to Wells Fargo was not validly executed. The Defendants attempt to justify this hole in the title by stating that Option One changed its name to Sand Canyon. A closer look at the alleged transaction in which Option One was named Sand Canyon shows that it was not that simple. According to the Affidavit of Dale Sugimoto, President of Sand Canyon Corporation (Exhibit 4 of Plaintiff's Complaint), Option One Mortgage Corporation split its' business and the assets associated with its' business by selling American Home Mortgage Servicing, Inc. ("AHMSI") its' loan servicing branch. Furthermore Mr. Sugimoto recites in his affidavit a press release from Richard C. Breeden, the chair of parent company H & R Block's Board of Directors, who stated on May, 1, 2008, that Option One was "closing" and Option One's 2008 Annual Report stated that Option One discontinued all operations. According to Mr. Sugimoto, Sand Canyon's only function was to deal with litigation claims for the former option One. Therefore, it appears that Sand Canyon is a completely

different company than Option One because it does include Option One's servicing business and because Option One shut down all its operations prior to Sand Canyon taking over.

It should be noted that the Oum Mortgage was serviced by AHMSI and a recent settlement was reached between AHMSI and Massachusetts District Attorney Martha Coakley in August of 2011. (See Exhibit 1). The Settlement provides that AHMSI is going to put 125 million towards modification efforts and allocate settlement payments to AHMSI customers whose loans were originated by Option One after January 2004. It should also be noted that Oum's attorney, Todd S. Dion, has spoken with Martha Coakley's office and has confirmed that Oum is one of the AHMSI customers that will benefit from this settlement arrangement. The Plaintiff, therefore, believes that these circumstances give this court more reason to at least hold or stay this action until the settlement arrangement has been worked out with Oum.

The Defendant cites <u>US Bank Natl. Asso. V. Ibanez</u>, 458 Mass. 637, 651 (2011), stating "The key…is that the foreclosing entity must hold the mortgage at the time of the notice and sale in order…to have the authority to foreclose under the power of sale…". The Ibanez decision also stated "where a note has been assigned but there is no written assignment of the mortgage underlying the note, the assignment of the note does not carry with it the assignment of the mortgage." The Defendants claim that Sand Canyon held the Mortgage at the time of the Assignment. It appears, however that the Note was held by Wells Fargo at the time of the Assignment pursuant to its pooling and servicing agreement with AHMSI. The Defendants also overlook the requirement that the transfer or Assignment must be valid in order to have any effect whatsoever. In this case the Assignment is invalidly executed by Theresa Esposito, an employee of Lender Processing Services, a company that hires its employees at $10 per hour to execute as many documents as possible without any clue as to what they are executing.

Furthermore, the Plaintiff alleges in her well pleaded complaint at the time of the Assignment Sand Canyon did not own the Oum Mortgage. This was not a baseless allegation but an allegation that was confirmed by Dale Sugimoto in a sworn statement taken under the penalty of perjury.

### B. Wells Fargo was required to show that it was a holder of the Note in order to properly invoke the statutory power of sale and the Defendants' contention that the foreclosure on the property was in compliance with Massachusetts law is false.

The Defendant states that Wells Fargo was not required to possess the Note and that there is no requirement in Massachusetts that the foreclosing entity be in possession of the note. The Defendants, however, only cite Mass. Gen. Laws c. 244 § 14 and a bankruptcy case to support their position. Mass. Gen. Laws c. 244 § 14 merely states that "mortgagee" may exercise the power. The statute does not state that a mortgagee may invoke the power regardless of whether or not the mortgage is the note holder. A further study of the legislative history of the statute by the Massachusetts Superior Court indicates that at the time the statute was enacted it was assumed that the mortgagee is the note holder. See Eaton v. Federal National Mortgage Association, 11-1382 (Mass. Super. Ct. June 17, 2011) citing Wolcott v. Winchester, 81 Mass 461, 465 (1860) ("the possession of the debt is essential to an effective mortgage…without it one cannot maintain an action to foreclose the mortgage"; Crowley v. Adams, 226 Mass. 582, 585 (1917) ("possession of the note is essential to an enforceable mortgage without which no mortgage could effectively be foreclosed.."); Geffen v. Perez, 312 Mass. 48, 54 (1942) ("the assignee of the mortgage never had possession of the promissory note and consequently is not holder or bearer".).

"Under the common law, both mortgage and mortgage note must be held by the foreclosing entity to validly foreclose…..the two instruments must be reunited in order to

effectively foreclose…the mortgage note has a parasitic quality, in that its vitality depends on the promissory note." Eaton at 3-5. Contrary to the Defendants' contention that Mass Gen Laws c. 244 14 does not require the mortgagee to hold the note, the Court in Eaton specifically stated that the statute has not superseded the common law. Id at 5-7. The Defendants' contention that Wells Fargo was not required to possess the note and was in compliance under Massachusetts law is false. The Plaintiff's complaint alleges that Sand Canyon did not assign the note at the time of the assignment because the assignment fails to state that the note was assigned. The assignment does state that Sand Canyon all of its interest in the mortgage. The affidavit of Mr. Sugimoto, however, states that Sand Canyon does not own any loans at the time of the assignment. Therefore, Sand Canyon failed to assign the note to Wells Fargo and Wells Fargo was not a valid mortgagee or assignee that could invoke the power of sale.

The Ibanez Court, explained that "the party foreclosing must prove that the assignment was made by a party itself that held the mortgage and the obligation the mortgage secures" (i.e. the note). (See Ibanez citing In re Parish) 326 B.R. 708, 720 (Bank. N. D. Ohio 2005). ("If the claimant acquired the note and mortgage from the original lender or from another party who acquired if from the original lender, the claimant can meet its burden of proof through evidence that traces the loan from the original lender to the claimant."). It is clear, therefore, that with every transfer of the note, there needs to be an assignment of the mortgage that corresponds to the transfer of the note in order for the party claiming to have standing to properly foreclose. The Assignment states that Sand Canyon assigned "all of the right, title, and interest that the assignor has". However, Mr. Sugimoto states that at the time of the assignment Sand Canyon did not own the mortgage. Therefore it appears that there is a material false statement in the Assignment. Sand Canyon could not assign something that it did not own. Therefore, the

Assignment is null and void because the notion that Sand Canyon assigned this residential real estate loan is simply not true.

### C. Defendant's Claim That Plaintiff Does Not Have Standing to Seek Quiet Title is False Because Plaintiff Specifically Claims Possession and Legal Title to the Property.

The Defendants' dubiously claim that the Plaintiff failed to allege that she holds legal title to the property. The Plaintiff clearly stated in her well pleaded complaint that she holds both possession and legal title to the Property by stating the following:

1) "Plaintiff, Chanta Oum, is a resident of and claims to be the actual owner of real property located at 18 Bourne Street, Lowell, MA 01852" (Plaintiff's Complaint at 4).

2) "On or about December 15, 2006, a Quitclaim Deed was recorded in the Middlesex County North Registry of Deeds in Book 20807 Page 130 granting the Property to the Plaintiff" (Plaintiff's Complaint at 15)

3) "Plaintiff, Chantha Oum, claims ownership and title to the Property from a Quitclaim Deed"

Furthermore the Plaintiff has attached as an exhibit to her complaint a copy of the Quitclaim Deed granting her the property as Exhibit 1. As the Court is aware Rule 10c of the Massachusetts Rules of Civil Procedure states that "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A Copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Therefore, Defendants claim that Plaintiff failed to clam legal title to the Property is entirely baseless.

D. Plaintiff's Complaint

## CONCLUSION

In the light most favorable to the Plaintiff, the factual allegations in the Plaintiff's Complaint are more than sufficient to establish a colorable claim. The Plaintiff has set forth

sufficient facts to demonstrate that he is entitled to the relief sought. WHEREFORE, for the above reasons the Plaintiff respectfully request that the Court deny the Defendants' Motion to Dismiss.

          Plaintiff, Chantha Oum
          By her attorney

          /s/ Todd S. Dion
          Todd S. Dion Esq. (Bar ID 6852)
          1319 Cranston Street
          Cranston, RI 02920
          401-942-9924 Phone
          401-270-2202 Fax

CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2011, a copy of the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on the parties listed on the NEF as not receiving electronic notice.

          /s/ Todd S. Dion
          Todd S. Dion