## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH M. O'BRIEN<br><br>    Plaintff,<br><br>v.<br><br>WELLS FARGO BANK, N.A. AS TRUSTEE<br>FOR OPTION ONE MORTGAGE LOAN<br>TRUST 2005-2 ASSET-BACKED<br>CERTIFICATES, SERIES 2005-2; SAND<br>CANYON CORPORATION and<br>AMERICAN HOME MORTGAGE<br>SERVICING, INC.,<br><br>    Defendant. | Civil Action No: 11-11683 |

| | |
|---|---|
| CHANTHA OUM<br>    *Plaintiff*<br><br>V.<br><br>WELLS FARGO BANK, N.A., AS TRUSTEE<br>FOR OPTION ONE MORTGAGE LOAN<br>TRUST 2007-2, ASSET-BACKED CERTIFICATES,<br>SERIES 2007-2; SAND CANYON CORPORATION;<br>    *Defendants* | Civil Action No. 11-11663 |

## OPPOSITION TO DEFENDANT, WELLS FARGO'S, MOTION TO DISMISS AND DEFENDANT, SAND CANYON'S MOTION FOR JUDGMENT ON THE PLEADINGS

Now come the Plaintiffs, Joseph M. O'Brien and Chantha Oum, in the above entitled cause and hereby objects to the Defendant's Motion to Dismiss. As grounds set forth the Plaintiffs aver that the reasons for dismissal as set forth by the Defendant fail as a matter of law because the Plaintiffs' Complaint, when viewed in the light most favorable to the plaintiff and assuming all facts as set forth in the complaint as true, contain "enough facts to state a claim to

relief that is plausible on its face". <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  The

Plaintiffs respectfully request that this Honorable Court deny Defendant's Motion to Dismiss for

the following reasons as delineated in this memorandum of law.

## <u>FACTS AS TO PLAINTIFF JOSEPH M. O'BRIEN</u>

The Plaintiffs aver that the "pertinent facts" as set forth in the Defendant's Memorandum

of Law at pages 1-3 omit and mischaracterize the allegations as actually set forth in the

Plaintiffs' Complaint.  The "pertinent facts" as set forth in the Plaintiffs' Complaint in reality

read as follows:

1. On or about November 18, 2003, Plaintiff, Joseph M. O'Brien, purchased the Property located at 251 Theresa Road, Bellingham, MA in consideration of $1.00.

2. On or about November 24, 2003 a Quitclaim Deed was recorded in the Norfolk County North Registry of Deeds in Book 20230 Page 79 granting the Property to the Plaintiff. (Exhibit 1)

3. On or about December 10, 2004, Mortgage Solutions Inc sold a subprime residential real estate loan to the Plaintiff in the amount of $235,800.00.  The alleged Lender on the Loan was Mortgage Solutions and the loan consisted of a Promissory Note to Mortgage Solutions secured by a Mortgage to Mortgage Solutions.

4. Based on information and belief, during the underwriting of said Loan, Mortgage Solutions and its agents stated that the Plaintiff earned more income than what he actually earned.

5. During the underwriting of said Loan, Mortgage Solutions and its agents stated that the Fair Market Value of the Property was higher than it actually was.

6. On or about December 10, 2004 Plaintiff executed a Mortgage to Mortgage Solutions.  The Mortgage was recorded on December 15, 2004 in Book 21889 Page 572 in the Norfolk County Registry of Deeds ("The O'Brien Mortgage").  (Exhibit 2)

7. Paragraph 19 of the Mortgage, entitled "Sale of Note; Change of Loan Servicer", provides in pertinent part that even if the loan is transferred to a loan servicer, the holder of the Note and this Security Instrument shall be deemed to be the Lender. (ie. Mortgage Solutions)

8. Paragraph 21 of the Mortgage provides in pertinent part that **If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Paragraph 14.  Lender shall publish the notice of sale, and the**

**Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale.** [Emphasis added]

9. The Lender in this case was the only party, pursuant to the plain language of the Mortgage that could invoke the Statutory Power of Sale.

10. On September 12, 2005, an "Assignment of Mortgage" was recorded in the Norfolk County Registry of Deeds Book 22885 Page 581, purporting to assign the Mortgage from Mortgage Solutions inc. to Option One. (Exhibit 3)

11. Based on information and belief, Mortgage Solutions Inc., was not the actual "Lender" or source of the $235.800.00 given to Plaintiff as part of this loan. Mortgage Solutions acted as a "middle man" and transferred the Note off to another entity after the closing and the loan ended up with Option One.

12. On November 23, 2009, an "Assignment of Mortgage" was recorded in the Norfolk County Registry of Deeds Book 27242 Page 521, purporting to assign the Mortgage from "Sand Canyon Corporation f/k/a Option One" to Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2005-2, Asset-Backed Certificates, Series 2005-2 ("Wells Fargo as Trustee"). (Exhibit 4)

13. There is no assignment of the O'Brien Mortgage or Note from Option One to Sand Canyon Corporation recorded in the Norfolk County Registry of Deeds..

14. The "Assignment of Mortgage" failed to validly transfer the Mortgage and the Note in accordance with Massachusetts Law.

15. Wells Fargo as Trustee was not a mortgagee or assignee of the mortgagee that could invoke the Statutory Power of Sale pursuant to Massachusetts Law

16. The Assignment was allegedly executed by a Cheryl Thomas, as Vice President of Sand Canyon Corporation, Chris Pendly as Assistant Secretary of Sand Canyon Corp., witnessed by a Lisa Baldwin and Dawn Williams and Notarized by a Brittany Snow in Fulton County Georgia.

17. On or about April 3, 2011, an interview of the same Chris Pendley referred to paragraph 31 was aired on the nationally televised show 60 Minutes. During that interview Mr. Pendley described how, while he had no experience at all in banking or legal documents, he was employed by DOCX and that he signed thousands of fraudulent assignments for 10 dollars per hour as an officer of dozens of companies. Based on information and belief the Assignment of Mortgage referred to in paragraph 27 was one of the assignments Mr. Pendley fraudulently executed.

18. Based on information and belief the signatures of Cheryl Thomas, Chris Pendley, Lisa Baldwin, Dawn Williams and Brittany Snow are not valid and are not duly executed or notarized in accordance with Massachusetts Law.

19. At the time of the alleged execution of the Assignment of Mortgage, Cheryl Thomas, Chris Pendley, Lisa Baldwin, Dawn Williams, and Brittany Snow were actually employees of DOCX not Sand Canyon. The Assignment was prepared, signed and filed by DOCX years after the closing date of the Trust.

20. As of the date of the purported Assignment of Mortgage, Cheryl Thomas, Chris Pendley, Lisa Baldwin, Dawn Williams, and Brittany Snow were not validly authorized to execute assignments on behalf of Sand Canyon.

21. As of the date of the purported Assignment of Mortgage, Cheryl Thomas, Chris Pendley, Lisa Baldwin, Dawn Williams, and Brittany Snow were not employed by Sand Canyon.

22. As of the date of the purported Assignment of Mortgage, Sand Canyon could not authorize assignments of residential mortgages on behalf of Option One.

23. Wells Fargo Bank, although purporting to act as Trustee of the alleged Trust that purports to hold the O'Brien Mortgage, is not qualified as a trust company.

24. Despite the use of the word "Bank" Wells Fargo was not acting as a "bank" in any sense of the word when acting as Trustee of the alleged security claiming to hold the O'Brien mortgagee.

25. The Option One Mortgage Loan Trust 2005-2, Asset-Backed Certificates, Series 2005-2 is not a valid REMIC.

26. The O'Brien Mortgage and Note were not validly transferred to the Option One Mortgage Loan Trust 2005-2, Asset-Backed Certificates, Series 2005-2 because the Mortgage and Note were not transferred to it within 90 days of the Trust's creation as required by law.

27. The "Assignment of the Mortgage" is not valid because the assignment was not validly executed by a person with authority to assign the Mortgage and Note.

28. The Assignment of Mortgage is not valid because Sand Canyon did not hold the O'Brien Mortgage and Note at the time the Assignment of Mortgage was allegedly executed.

29. Nine months prior to the November 17, 2009 Assignment of Mortgage, on March 18, 2009, Dale M. Sugimoto, President of Sand Canyon Corporation, executed a sworn affidavit under the penalty of perjury. The affidavit states that as of March 18, 2009, "Sand Canyon does not own any residential real estate mortgages". (Exhibit 5)

30. The O'Brien Mortgage was a residential real estate mortgage.

31. The Assignment of Mortgage from Sand Canyon to Wells Fargo as Trustee, dated November 17, 2009, is invalid because Sand Canyon did not own the O'Brien Mortgage or Note at the

time the Assignment of Mortgage as per the sworn Affidavit of Mr. Sugimoto on March 18, 2009.

32. As of November 17, 2009, the Mortgage was not validly assigned to the Option One Mortgage Loan Trust 2005-2, Asset-Backed Certificates, Series 2005-2.

33. Defendant, AHMSI never validly held the O'Brien Mortgage or Note.

34. Defendant, Wells Fargo, never validly held the O'Brien Mortgage or Note.

35. On February 8, 2010, Wells Fargo as Trustee recorded a filed a Servicemembers' Relief Act Complaint and Order of notice with the Norfolk County Superior Court to foreclose on the Property. (Exhibit 6)

36. On or about March 28, 2011, Wells Fargo as Trustee conducted a foreclosure auction on the O'Brien Property.

37. On or about May 23, 2011 a Foreclosure Deed purporting to grant ownership of the Property to Wells Fargo was recorded in the Norfolk County Registry of Deeds in Book 28816 Page 263. The Foreclosure Deed is invalid and void because Wells Fargo did not validly hold the O'Brien mortgage at the time of publication and at the time of the auction.

## FACTS AS TO PLAINTIFF CHANTHA OUM

The Plaintiff avers that the "pertinent facts" as set forth in the Defendant's Memorandum of Law at pages 1-3 omit and mischaracterize the allegations as actually set forth in the Plaintiff's Complaint. The "pertinent facts" as set forth in the Plaintiff's Complaint in reality read as follows:

1. On or about December 15, 2006, Plaintiff, Chantha Oum, purchased the Property located at 18 Bourne Street, Lowell, MA in consideration of $187,000.00.

2. On or about December 18, 2006 a Quitclaim Deed was recorded in the Middlesex County North Registry of Deeds in Book 20807 Page 130 granting the Property to the Plaintiff. (Exhibit 1)

3. On or about December 15, 2006, Option One sold a subprime residential real estate loan to the Plaintiff in the amount of $168,300.00. The alleged Lender on the Loan was Option One and the loan consisted of a Promissory Note to Option One secured by a Mortgage to Option One.

4. Based on information and belief, during the underwriting of said Loan, Option One and its agents stated that the Plaintiff earned more income than what she actually earned.

5. During the underwriting of said Loan, Option One and its agents stated that the Fair Market Value of the Property was higher than it actually was.

6. The initial interest rate on the Note was 9.8

7. Option One and its' agents induced the Plaintiff to agree to the Loan by stating that she would be able to refinance the Property to a fixed rate loan at a lower monthly payment prior to the rate hike on January 1, 2009.

8. On or about December 15, 2006 Plaintiff executed an Adjustable Rate Promissory Note and a Mortgage to Option One. The Mortgage was recorded on December 18, 2006 in Book 20807 Page 131 in the Middlesex County North Registry of Deeds ("The Oum Mortgage"). (Exhibit 2)

9. Paragraph 19 of the Mortgage, entitled "Sale of Note; Change of Loan Servicer", provides in pertinent part that even if the loan is transferred to a loan servicer, "the holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder" (ie. Option One)

10. Paragraph 21 of the Mortgage provides in pertinent part that **If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Paragraph 14. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale.** [Emphasis added]

11. The Lender in this case was the only party, pursuant to the plain language of the Mortgage that could invoke the Statutory Power of Sale.

12. On page 6 of the Mortgage, there are lines for the signature of "Witnesses" of the Plaintiff's signature. There is no signature of any "Witnesses" of the signature of the Plaintiff on the Mortgage.

13. The Notary Acknowledgement Clause on page 6 of the Mortgage fails to state how or if Chantha Oum was identified to be the person signing the Mortgage.

14. The Mortgage is not validly acknowledged.

15. On July 27, 2010, an "Assignment of Mortgage" was recorded in the Middlesex County North Registry of Deeds Book 24123 Page 155, purporting to assign the Mortgage from "Sand Canyon Corporation f/k/a Option One" to Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2007-2, Asset-Backed Certificates, Series 2007-2 ("Wells Fargo as Trustee"). (Exhibit 3)

16. There is no assignment of the Oum Mortgage or Note from Option One to Sand Canyon Corporation recorded in the Middlesex County North Registry of Deeds..

17. The ""Assignment of Mortgage" of Mortgage" fails to state that the Note was assigned.

18. The "Assignment of Mortgage" failed to transfer the obligation in which the mortgage secured (ie. The Note).

19. The "Assignment of Mortgage", in effect, disconnected the Mortgage security instrument from the Note and rendered the Mortgage unsecured.

20. The "Assignment of Mortgage" failed to validly transfer the Mortgage and the Note in accordance with Massachusetts Law.

21. There is no valid "Assignment of Mortgage" because the purported "Assignment of Mortgage" failed to assign the obligation the Mortgage secured (ie. the Note).

22. Wells Fargo as Trustee was not a mortgagee or assignee of the mortgagee that could invoke the Statutory Power of Sale pursuant to Massachusetts Law

23. The Assignment was allegedly executed by a Theresa Esposito, as Vice President for Sand Canyon Corporation, witnessed by a Sabrina Wyche and Notarized by a Sonya F. Williams in Duval County Florida.

24. Based on information and belief the signatures of Theresa Esposito, Sabrina Wyche and Sonya F. Williams are not valid and are not duly executed.

25. Theresa Esposito is actually an employee of Lender Processing Services ("LPS") in Jacksonville, FL, not Sand Canyon.  The Assignment was prepared, signed and filed by LPS years after the closing date of the Trust.

26. As of the date of the purported Assignment of Mortgage on May 28, 2010, Theresa Esposito, Sabrina Wyche and Sonya F. Williams were not validly authorized to execute assignments on behalf of Sand Canyon.

27. As of the date of the purported Assignment of Mortgage on May 28, 2010, Theresa Esposito, Sabrina Wyche and Sonya F. Williams were not employed by Sand Canyon.

28. As of the date of the purported Assignment of Mortgage on May 28, 2010, Sand Canyon could not authorize assignments on behalf of Option One.

29. Wells Fargo Bank, although purporting to act as Trustee of the alleged Trust that purports to hold the Oum Mortgage, is not qualified as a trust company.

30. Despite the use of the word "Bank" Wells Fargo was not acting as a "bank" in any sense of the word when acting as Trustee of the alleged security claiming to hold the Oum mortgagee.

31. The Option One Mortgage Loan Trust 2007-2, Asset-Backed Certificates, Series 2007-2 is not a valid REMIC.

32. The Oum Mortgage and Note were not validly transferred to the Option One Mortgage Loan Trust 2007-2, Asset-Backed Certificates, Series 2007-2 because the Mortgage and Note were not transferred to it within 90 days of the Trust's creation as required by law.

33. The "Assignment of the Mortgage" is not valid because the assignment failed to assign the Note and was not validly executed by a person with authority to assign the Mortgage and Note.

34. The Assignment of Mortgage is not valid because Sand Canyon did not hold the Oum Mortgage and Note at the time the Assignment of Mortgage was allegedly executed.

35. Fourteen months prior to the May 28, 2010 Assignment of Mortgage, on March 18, 2009, Dale M. Sugimoto, President of Sand Canyon Corporation, executed a sworn affidavit under the penalty of perjury.  The affidavit states that as of March 18, 2009, "Sand Canyon does not own any residential real estate mortgages".  (Exhibit 4)

36. The Oum Mortgage was a residential real estate mortgage.

37. The Assignment of Mortgage from Sand Canyon to Wells Fargo as Trustee, dated May 28, 2010, is invalid because Sand Canyon did not own the Oum Mortgage or Note at the time the Assignment of Mortgage as per the sworn Affidavit of Mr. Sugimoto on March 18, 2009.

38. As of May 28, 2010, the Mortgage was not validly assigned to the Option One Mortgage Loan Trust 2007-2, Asset-Backed Certificates, Series 2007-2.

39. Defendant, AHMSI never validly held the Oum Mortgage or Note.

40. Defendant, Wells Fargo, never validly held the Oum Mortgage or Note.

41. On September 1, 2010, Wells Fargo as Trustee recorded a filed a Servicemembers' Relief Act Complaint and Order of notice with the Middlesex County Superior Court to foreclose on the Property.  (Exhibit 5)

42. Sometime between September 1, 2010 and February 19, 2011, Wells Fargo as Trustee conducted a foreclosure auction on the Oum Property.

43. On February 19, 2011, Dolan Connly sent Plaintiff a "72 Hour Notice To Quit and Vacate Premise" Notice to Plaintiff on behalf of Wells Fargo.  The Notice states "Please be advised that this office represents Wells Fargo Bank, N.A. as Trustee for Option One Mortgage Loan Trust 2007-2, Asset-Backed Certificates, Series 2007-2 as the new owner of the property situated at 18 Bourne Street, Unit 2, Lowell, MA".  (Exhibit 6)

44. As of the date of the Notice in paragraph 54 a Foreclosure Deed purporting to grant ownership of the Property to Wells Fargo was not recorded in the Middlesex County North Registry of Deeds.

## STANDARD OF REVIEW

On a motion to dismiss, the court "must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75,77 (1st Cir. 1999)). Material attached to a complaint, or incorporated by reference, are a part of the pleading itself, and the Court may consider them on a motion to dismiss. Trans-Spec Truck Serv. Caterpillar, 524 F.3d 315, 321 (1st Cir. 2008). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That is "factual allegations must be enough to raise a right to relief above the speculative level, ...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555.

## ARGUMENT

The Plaintiffs have claimed that the Defendants do not have the right to foreclose because the assignments and foreclosure deeds are either invalid or void as a matter of law. The Plaintiffs further contend that mortgage assignments are, pursuant to Massachusetts Law, transfers of an interest in real estate, and as such, the homeowner/mortgagor is a party to those transactions thus giving them standing to challenge the validity of the assignments. The Defendants have argued that, as a matter of law, that the homeowner/mortgagors are not parties to the "contracts" and do not, therefore, have standing to challenge their validity. It is the position of the Plaintiffs that the Plaintiffs do have standing to challenge the assignments and that their standing has its roots in the Massachusetts General Laws as well as the common law of Massachusetts.

According to Massachusetts Law:

> "The requisite standing to prosecute a claim for relief exists when the plaintiff has alleged that 'the challenged action has caused him injury in fact, economic or otherwise'. <u>Association of Data Processing Service Organizations, Inc. v. Camp</u>, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). This legally cognizable and protectable interest must be 'concrete and particularized *** and *** actual or imminent, not 'conjectural' or 'hypothetical'' <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

This Plantiffs intends to demonstrate standing to prosecute a claim for relief when a plaintiff owns a fee simple interest in real property by virtue of a warranty or quitclaim deed recorded in the land evidence records within the State of Massachusetts and that plaintiff's interest purports to be taken away by virtue of a Foreclosure Deed recorded in the land evidence records within the State of Massachusetts.  [(See <u>Smithfield Estates v. Heirs of Hathaway</u>, PC-2003-4157 (R.I. Super 8-15-2011) "While it is true that a plaintiff seeking to quiet title must possess sufficient legal interest in the property so as to avoid dismissal for lack of standing, a <u>claim</u> of rightful legal ownership satisfies these requirements." <u>McCartin Leisure Industries, Inc. v. Baker</u>, 376 Mass. 62, 66, 378 N.E.2d 980, 983 (1978) (emphasis added). Moreover, it is "well settled" that a grantor, grantee <u>or one who</u> <u>would take some interest in the real estate as a result of setting aside a deed</u> may attack the deed's validity. See <u>Narragansett Indian Tribe v. RIBO, Inc.</u>, 686 F. Supp. 48 (D.R.I. 1988) (citing <u>Norris v. Harrison</u>, 198 F.2d 953, 954 (D.C. Cir. 1952)); <u>City of Bluefield v. Taylor</u>, 365 S.E.2d 51, 55 (W. Va. 1987)) (emphasis added)].

I.    **Defendants' assertion that the Plaintiff lacks standing to challenge the validity of the assignment of his mortgage to Wells Fargo fails because Massachusetts General Laws specifically grants the Plaintiff standing to attack the validity of an adverse interest to the title of his property.**

The Defendants' memorandum argues that the Plaintiff lacks standing to attack the validity of the assignment because he is not a party to the assignment.  This argument fails because the Massachusetts General Laws Declaratory Judgment and Quieting Title statutes give the Plaintiff standing to challenge the validity of an adverse interest to the title of his property. Furthermore the Plaintiff's well-pleaded complaint specifically challenges the the power to assign the mortgage alone without the Promissory Note.  The relevant Massachusetts statutes in which the Plaintiff has filed this action challenging the validity of Wells Fargo's adverse interest in the property and the actions taken by the Defendants' to cloud the title of the Plaintiff's property, in pertinent part, are as follows:

### G.L.c. 231A, § 1. Power to make declaratory determination; jury questions

The supreme judicial court, the superior court, the land court and the probate courts, within their respective jurisdictions, may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen and is specifically set forth in the pleadings and whether any consequential judgment or relief is or could be claimed at law or in equity or not; and such proceeding shall not be open to objection on the ground that a merely declaratory judgment or decree is sought thereby and such declaration, when made, shall have the force and effect of a final judgment or decree and be reviewable as such....

### G.L.c. 231A, § 2. Controversies to which declaratory judgment procedureis applicable. Section 2.  The procedure under section one may be used to secure determinations of right, duty, status or other legal relations under deeds, wills or written contracts or other writings constituting a contract or contracts or under the common law, or a charter, statute, municipal ordinance or by-law, or administrative regulation, including determination of any question of construction or validity thereof which may be involved in such determination....

**G.L.c. 231A, § 9. Purpose and construction of declaratory judgmentprovisions.** Section 9. This chapter is declared to be remedial. <u>Its purpose is to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations, and it is to be liberally construed and administered</u>....

**G.L.c. 240, § 1. Petition to compel adverse claimant to try title.** Section 1. <u>If the record title of land is clouded by an adverse claim, or by the possibility thereof, a person in possession of such land claiming an estate of freehold</u> therein or an unexpired term of not less than ten years, and a person who by force of the covenants in a deed or otherwise may be liable in damages, if such claim should be sustained, <u>may file a petition</u> in the land court <u>stating his interest, describing the land, the claims and the possible *adverse claimants* so far as known to him</u>, and praying that such claimants may be summoned to show cause why they should not bring an action to try such claim.

**G.L.c. 240, § 6. Actions in supreme judicial, superior or land courts to quiet title.**

Section 6. <u>If, in a civil action in the</u> supreme judicial or the <u>superior court</u>, or in the land court<u>, to quiet or establish the title to land situated in the commonwealth or to remove a cloud from the title thereto, it is sought to determine the claims or rights of person</u>.... out of the commonwealth.... such persons may be made defendants.... It shall be unnecessary for the maintenance of such action that the defendants shall have a claim or the possibility of a claim resting upon an instrument the cancellation or surrender of which would afford the relief desired<u>; **but it shall be sufficient that they claim or may claim by purchase, descent or otherwise, some right, title, interest or estate in the land which is the subject of the action and that their claim depends upon the construction of a written instrument or cannot be met by the plaintiffs without the production of evidence.**</u>

In this case the Plaintiffs specifically claimed title and referenced the Quitclaim Deed purporting to vest title to the properties.  Plaintiffs set forth in the body of his well pleaded complaint that Defendants, have clouded the title of his property by recording an Assignment of

an "adverse interest", to wit, the Mortgage of the Middlesex County North Registry of Deeds. Plantiffs further avers that the Mortgage and the Assignment are invalid, that they fail to adequately transfer the Statutory Power of Sale to Wells Fargo, and requests that the Court remove the clouds in his title as set forth in the Complaint. The Plaintiff has set forth all of the requirements and allegations necessary to bring a quiet title action against the Defendants under Massachusetts General Laws ch240 § 6. The Plaintiff clearly has standing to challenge the validity of the Mortgage, the Assignment and any subsequent foreclosure deed according to the plain language of the statutes.

This case is a Declaratory Judgment and Quiet Title action under Massachusetts General Laws c. 231A and  G.L.c. 240 which specifically grant standing for one claiming title by conveyance to real property to challenge the validity of an adverse interest on the title of the property claimed. Thus, in the case at bar, standing is specifically granted to Plaintiffs by statute. In this case, the Plaintiff's well pleaded complaint challenges the Defendant's alleged status as a holder of the Note. (See Complaint at paragraphs 17, 28, 29, 30, 35, 45). Furthermore, In this case the Plaintiffs well pleaded complaint challenges MERS authority to assign a mortgage alone without the note and specifically challenges the MERS mortgage as granting MERS the authority to assign the mortgage without the note. SEE 17-22, 26-35.

The clear and unambiguous language of the Massachusetts Declaratory Judgment and Quieting Title statutes allow a person claiming title to real property broad standing to challenge any person or entity with an adverse interest in the real property. The Plaintiff's well-pleaded complaint sets forth that the Plaintiff is claiming ownership of the real property by Quitclaim Deed and specifically cites the adverse interests as the Mortgage, the Assignment, and any subsequent Foreclosure Deed recorded as a result of such Mortgage and Assignment. The

reasons for challenging the validity of these adverse recorded documents are specific and clear in accordance with Rule 12(b)(6) and Mass. Gen. Laws . ch 231A and 240. Therefore, the Defendants' assertion that the Plaintiff lacks standing to challenge the Assignment and subsequent foreclosure deed must fail.

II.     **The Record Owner of an Interest in Real Property has a "Legally Cognizable and Protectable Interest" and the Recording of a Foreclosure Deed Taking Away that Interest and/or an Assignment of Mortgage to the Grantor of a Foreclosure Deed is an Action That Causes An "Injury In Fact".**

It seems clear and unambiguous to this Plantiffs that a Plaintiff's interest in real property by virtue of a recorded Deed granting real property to a Plaintiff is indeed a "legally cognizable and protectable interest". Lujan v. Defenders of Wildlife, 504 U.S. 555, 560. It also seems clear and unambiguous to the Plaintiffs that the recording of a Foreclosure Deed that takes away that Plaintiff's "legally cognizable and protectable interest" in that real property is an "action" that has caused the Plaintiff an "injury in fact" that is "economical and otherwise". Id. (See also In Re. Schwartz, Case No. 06-42476-MSH August 22, 2011 citing Brae Asset Fund, L.P. v. Kelly, 223 B.R. 50, 56 (D. Mass. 1998) Plaintiff's "standing to seek relief is based on her property interest in light of the alleged wrongful foreclosure"). Furthermore, it would also seem clear and unambiguous that a challenge to the validity of a recorded Foreclosure Deed taking away that Plaintiff's legally and cognizable interest in the real property would encompass a factual question as to how the entity invoking a Statutory Power of Sale acquired that strict and limited right.

One need not cite the Due Process Clause of the United States Constitution to know that record ownership in real property is "concrete and particularized". One need only see the recorded deed granting the plaintiff an interest in the real property to know that the plaintiff's interest in that real property is "concrete and particularized * * * and actual or imminent, not

conjectural or hypothetical". Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Furthermore, the recording of a Foreclosure Deed taking away the plaintiff's recorded interest in real property can certainly be construed as an "injury in fact" that is "economical and otherwise" due to the unique characteristics of real property, whether or not aesthetic or sentimental, consistent with the requirements of standing to prosecute a claim.

The Defendants cite several cases in support of their position that a Plaintiff lacks standing to challenge an Assignment in which the plaintiff is not a party. The cases cited by the Defendants do not address the issue from a title ownership perspective. The cases cited by the Defendants are not Massachusetts cases nor are they in jurisdictions which have a similar Quiet Title Statute as R.I.G.L. 34-16-4. For example, the case of Bridge v. Aames Capital Corp., No. 1:09 CV2947, 2010 WL 3834059 is irrelevant because the Ohio Revised Code does not have a Quiet Title Statute that specifically allows a person claiming title to real property to challenge an adverse interest on the title, such as R.I.G.L. 34-16-4. Likewise in the case of Livonia Property Holdings, LLC v. 12840 Farmington Road Holdings LLC, No. 12840-12976, 2010 WL 1956867 (E.D. Mich. May 13, 2010), the State of Michigan does not have a similar Quiet Title statute as Massachusetts.

In Bortolotti v. Hayden, 449 Mass. 193 (2007) the Supreme Judicial Court of the Commonwealth of Massachusetts held that despite the Plaintiff/ Buyer's knowledge that a right of first refusal existed, Plaintiff's standing to challenge the right of first refusal between the Defendant seller and a third party was not abandoned or lost because he was not a part of the contract granting the right of first refusal. Id. at 197. The Bartolotti court reasoned that to deny standing in such a case would allow "a seller to rely on any spurious claim so long as it implicated a third party's rights, in order to avoid a contract with impunity". The Plantiffs

suggests that an analogy exists between the plaintiff's standing to challenge the right of first refusal contract as in Bartolotti and the assignment of mortgage in this case and others like it. The Bartolotti Court stated that "the plaintiff has a cognizable legal interest in the validity of the restriction he challenges, and that is enough to confer standing". Furthermore, the purpose of a declaratory judgment is "to remove, and afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations, and it is to be liberally construed and administered". Id. 197-198.

On December 16, 2011 the Massachusetts Superior Court in Middlesex County published a decision by Justive Garry V, Inge that examined the current state of the law in Massachusetts with regard to a mortgagor's standing to challenge assignments of a mortgage. (See Exhibit A Ouch v. Onewest Bank, FSB 11-01230) The Court stated as follows:

> "The Supreme Judicial Court in Ibanez found that 'any effort to foreclose by a party lacking jurisdiction and authority to carry out a foreclosure under these statutes is void'. Id. This language has been interpreted to give a party standing to challenge the validity if an assignment by a nominee only if the party is the lender the successor or assign of the lender, or a third party beneficiary of the pooling and servicing agreement. Juarez, 2011 U.S. Dist LEXIS 128087, at 11-14 (plaintiff mortgagor has no legally protected interest in the assignment of the mortgage); Peterson v. GMAC Mortgage LLC, 2011 U.S. Dist. LEXIS 12316 at 1 (D. Mass., Oct. 2011) (Ibanez does not 'provide an independent basis for mortgagors to collaterally contest previously executed mortgage assignments to which they are not a party and that do not grant them and interest or rights") Relying on the very same language, at least one other court has concluded to the contrary. Rosa v. Mortgage Electronic Registration Sys, 2011 U.S. Dist. LEXIS 110151, at 10 n. 5 (D. Mass., Sept 2011) ("Plaintiffs appear to have standing under this principle [in Ibanez], because the allegations, if proven, would render the foreclosure sale void, under Massachusetts Law"). Additionally, courts have found standing, in similar instances even without relying on Ibanez. See Schwartz v. HomEq, Servicing, 2011 Bankr. LEXIS 3213, at 3 (Bankr. D. Mass., Aug. 2011)("mortgagor's standing to seek relief is based on her property interest in light of the wrongful

foreclosure"); <u>Culhane v. Aurora Loan Services of Neb.</u>, 2011 U.S. Dist LEXIS 136112, at 39-40 (D. Mass., Nov 2011) (MERS holding legal title creates cloud on property, reducing the value, and possibly exposing mortgagor to greater deficiency judgment is sufficient to give standing to challenge MERS involvement in foreclosure proceeding).

This court is persuaded by the rationale of the courts finding that a mortgagor has standing to challenge an assignment of a mortgage by MERS. If the assignment by MERS is flawed in some manner, the plaintiff would have a claim for wrongful foreclosure. See <u>Rosa</u> 2011 U.S. Dist. LEXIS 110151, at 10. Such a claim satisfies the prerequisites for standing – namely that the plaintiff suffer a remedial injury that may be shown to be caused by the defendant <u>Juarez</u>, 2011 U.S. Dist. LEXIS 128087, at 11.

The clear, unambiguous and broad language of the Massachusetts Quieting Title statute allows a person claiming title to real property broad standing to challenge any person or entity with an adverse interest in the real property. If a Plaintiff's complaint sets forth that the Plaintiff, is claiming ownership of the real property by Deed on Title and specifically cites the adverse interests as the Mortgage, the Assignment, and any subsequent Foreclosure Deed recorded as a result of such Mortgage and Assignment, the reasons for challenging the validity of these adverse recorded documents are specific and clear in accordance with Rule 12(b)(6). Therefore, the assertion that one who claims an ownership interest in real property by way of a recorded Deed in the land evidence records lacks standing to challenge the Assignment and subsequent foreclosure deed must fail.

The Plantiffs

/s/ Todd S. Dion
Todd S. Dion Esq. (159109)
1319 Cranston Street
Cranston, RI 02920
401-663-0699 Phone
401-270-2202 Fax

January 4, 2012

CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2012, a copy of the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on the parties listed on the NEF as not receiving electronic notice.

/s/ Todd S. Dion_____

Todd S. Dion

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 11-01230

### HEANG OUCH

#### vs.

### ONEWEST BANK, FSB & others[1]

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

The plaintiff, Heang Ouch ("Ouch") brought this action seeking a declaratory judgment and to quiet title, alleging that the defendants wrongfully foreclosed on her property. She also seeks to recover damages due to the defendants' alleged breach of the duty of good faith and due diligence. The matter is before the court on the Defendants' motion to dismiss the complaint pursuant to Mass. R.Civ.P.12(b)(6).

For the following reasons, the Defendants' motion to dismiss is **ALLOWED IN PART** and **DENIED IN PART**.

### BACKGROUND

The facts alleged in the Verified Complaint are as follows. On or about January 16, 2007, Ouch, purchased the property located at 43 Inland Street in Lowell (the "Property"), for $240,000. To finance the purchase, she executed a mortgage on the Property to secure a loan of

---

[1]   Federal National Mortgage Association and Mortgage Electronic Registration Systems, Inc.

$192,000. The mortgage document, dated January 19, 2007, names IndyMac Bank FSB ("IndyMac") as the "Lender." The named "Mortgagee," however, was Mortgage Electronic Registration Systems, Inc. ("MERS").

The mortgage document at page 3 reads: "MERS holds only legal title to the interest granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

On June 15, 2010, the defendant OneWest Bank ("OneWest") filed a Servicemembers Relief Act complaint with the Middlesex County Land Court to initiate foreclosure proceedings on the Property. The complaint does not state the grounds upon which the bank sought to foreclose, although it can be inferred that the plaintiff defaulted on her mortgage payments. At the time of the filing, OneWest alleged that it was the current holder of the mortgage by virtue of an assignment from MERS. The written assignment is dated June 11, 2009, and is signed by Andrew Harmon ("Harmon") as Assistant Secretary and Vice President of MERS. Harmon is also a partner at Harmon Law Offices PC and the attorney who filed the complaint against Ouch with the Land Court.

The Land Court granted leave for the defendant to foreclose with no cloud to the title, and a sale of the Property was held. A foreclosure deed was then recorded on September 10,

2010, naming the defendant Federal National Mortgage Association ("FNMA") the record title owner. Charmagne Williams, Assistant Vice President of OneWest, executed the foreclosure deed.

Ouch alleges that OneWest unlawfully foreclosed on her house and that the subsequent sale of the home to FNMA is void. In support of this contention, she alleges that MERS did not have authority to assign the mortgage to OneWest. Moreover, the plaintiff claims that the assignment of the mortgage by MERS to OneWest, which was executed by Harmon, constituted a conflict of interest, and therefore was an invalid assignment by law.

## DISCUSSION

### 1. Mass. R. Civ. P. 12(b)(6)

Pursuant to the standard of review adopted in 2008 by the Supreme Judicial Court for motions to dismiss, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). At the pleading stage, the plaintiff is required to present "factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect the threshold requirement . . . that the plain statement possess enough heft to sh[ow] that the pleader is entitled to relief." Id. at 637, quoting Bell Atl. Corp., 550 U.S. at 557 (internal quotations

omitted). While the factual allegations need not be detailed, they must do something more than create a "suspicion" of a legal right of action. *Id.* Moreover, a complaint will not be dismissed if it appears that the plaintiff is entitled to some form of relief although the legal theories named in the complaint may not be appropriate. *Nader* v. *Citron*, 372 Mass. 96, 104 (1977); *Lichoulas* v. *Lowell*, 78 Mass. App. Ct. 271, 275 (2010).

## 2. Defendants' Motion to Dismiss

The defendants assert that the assignment of the mortgage securing the plaintiff's home was valid and that the plaintiff lacks standing to bring this lawsuit. The defendants ask the court to dismiss all claims the plaintiff brings in her complaint: declaratory judgment, quiet title, and breach of the duty of good faith and due diligence.

### a. Count I: Declaratory Judgment and Count II: Quiet Title

Massachusetts is a non-judicial foreclosure state. Rather, a party seeking to foreclose on a property may do so under statutory authority either by entry or sale. See generally G. L. c. 244. "Foreclosure under power of sale is governed by chap. 244 § 14, which provides: 'The mortgagee…or person authorized by the power of sale…may upon breach of condition and without action, do all the acts authorized or required by the powers.'" *In re Huggins*, 357 B.R. 180, 183 (Bankr. D. Mass, Dec. 2006), quoting G. L. c. 244, §14. If a mortgagor defaults on payments to the interest secured by the promissory note, the mortgagee may foreclose on the property by sale at a public auction and convey the title in fee simple. *U.S. Bank Nat'l Assoc.* v. *Ibanez*, 458 Mass. 637, 646 (2011); G. L. c. 183, § 21.

There is limited judicial oversight of a party seeking to foreclose. The Servicemembers Relief

Act allows a party having some interest in the mortgage or mortgaged property to bring an action

for judicial determination that the title to the property is not clouded due to an interested party

being in or just having been discharged from military service. *Beaton* v. *Land Court*, 367 Mass.

385, 390 (1975); *Deutsche Bank* v. *Cicchelli*, Case No. 10 MISC 423350 (AHS), slip op. at *4

(Land Ct., Aug. 24, 2011). "In order to establish such an interest, 'a foreclosing entity may

provide a complete chain of assignments linking it to the record holder of the mortgage, or a

single assignment from the record holder of the mortgage.'" *Cicchelli*, 10 MISC 423350, at *4,

quoting *Ibanez*, 458 Mass. at 651.

      i. Plaintiff's Standing to Challenge Assignment

In their Motion to Dismiss, the defendants first assert the threshold notion that the

plaintiff lacks standing to challenge the validity of the assignment by MERS to OneWest.

> To have standing, a plaintiff must show: (1) "injury in fact"; (2) "causal connection
> between the claimed injury and challenged conduct"; and (3) redressability. *Duke Power
> Co.* v. *Carolina Env't Study Grp.*, 438 U.S. 59, 72, 75 n. 20 (1978). The plaintiff "must
> assert his own legal rights and interests, and cannot rest his claim to relief on the legal
> rights or interests of third parties." *Warth* v. *Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 45
> L. Ed. 2d 343 (1975). See also *Juarez* v. *U.S. Bank Nat'l Assoc.*, 2011 U.S. Dist. LEXIS
> 128087 at *11 (D. Mass., Nov. 2011).

> In support of their position, the defendants cite to *JP Morgan Acquisition Corp.* v. *Lord*,

> Case No. 10 MISC 427846, slip op. (Land Ct., Nov. 29, 2010), claiming that that case

> holds that only the lender or a successor or assign to the lender has standing to object to

an assignment by MERS acting in its capacity as a nominee. *Lord*, No. 10 MISC 427846, at 4 ("only First Franklin or *its* assignees have standing to object to that assignment, and they have not done so"). Here, Ouch is neither the lender nor a successor or assign in interest.

Despite the holding of the Land Court in *Lord* and other courts that have held similarly, this court finds that whether the mortgagor may challenge an assignment made by a nominee for a lender such as MERS is not a settled matter of law. Recent cases addressing this issue have relied on language contained in the *Ibanez* opinion. 458 Mass. at 647. The Supreme Judicial Court in *Ibanez* found that "[a]ny effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure under these statutes is void." *Id.* This language has been interpreted to give a party standing to challenge the validity of an assignment by a nominee only if the party is the lender, the successor or assign of the lender, or a third party beneficiary of the pooling and servicing agreement. *Juarez*, 2011 U.S. Dist. LEXIS 128087, at *11-14 (plaintiff mortgagor has no legally protected interest in the assignment of the mortgage); *Peterson* v. *GMAC Mortgage LLC*, 2011 U.S. Dist. LEXIS 123216, at *12 (D. Mass., Oct. 2011) (*Ibanez* does not "provide an independent basis for mortgagors to collaterally contest previously executed mortgage assignments to which they are not a party and that do not grant them any interests or rights"). Relying on the very same language, at least one other court has concluded to the contrary. *Rosa* v. *Mortgage Elec. Registration Sys.*, 2011 U.S. Dist. LEXIS 110151, at *10, n.5 (D. Mass. Sept. 2011) ("Plaintiffs appear to have standing under this principle [in

*Ibanez*], because the allegations, if proven, would render the foreclosure sale void, under Massachusetts law"). Additionally, courts have found standing in similar instances even without relying on *Ibanez*. See *Schwartz* v. *HomeEq Servicing*, 2011 Bankr. LEXIS 3213, at *3 (Bankr. D. Mass., Aug. 2011) ("[mortgagor's] standing to seek relief is based on her property interest in light of the alleged wrongful foreclosure"); *Culhane* v. *Aurora Loan Services of Neb.*, 2011 U.S. Dist. LEXIS 136112, at *39-40 (D. Mass., Nov. 2011) (MERS holding legal title creates cloud on property, reducing the value, and possibly exposing mortgagor to greater deficiency judgment is sufficient to give standing to challenge MERS involvement in foreclosure proceeding).

This court is persuaded by the rationale of the courts finding that a mortgagor has standing to challenge an assignment of a mortgage by MERS. If the assignment by MERS is flawed in some manner, the plaintiff would have a claim for wrongful foreclosure. See *Rosa*, 2011 U.S. Dist. LEXIS 110151, at *10. Such a claim satisfies the prerequisites for standing – namely that the plaintiff suffer a remedial injury that may be shown to be caused by the defendant. *Juarez*, 2011 U.S. Dist. LEXIS 128087, at *11. Moreover, as discussed below, even if the assignment by MERS to OneWest is found to be valid, Ouch may still have a viable cause of action against the defendants stemming from the assignment. For this reason, the court finds the plaintiff to have standing to challenge the validity and effect of the MERS assignment to OneWest.

b. MERS's Authority to Assign a Mortgage

Having found that the plaintiff has standing to bring her claims for wrongful foreclosure,

the court addresses the question of whether MERS had the authority to assign the mortgage and whether that assignment was valid.

Courts in the Commonwealth have consistently found that MERS does have the authority to assign mortgages when it is acting as a nominee for the lender. *Cicchelli*, 10 MISC 423350, at 5; *Aliberti* v. *GMAC Mortgage LLC*, 779 F. Supp. 2d 242 (D. Mass., April 2011); *In re Marron*, Case No. 10-45395-MSH, at 7 (Bankr. D. Mass., June 29, 2011) (MERS may foreclose and assign mortgages it holds); *GMAC Mortgage LLC* v. *Reynolds*, Case. No. 09 MISC 400318, slip op. at 3 (Land Ct. Dept., Bristol, ss., Nov. 30, 2010). The mortgage document at issue clearly states that MERS was the mortgagee and was acting as nominee for the lender, IndyMac. Even though MERS was a nominee, it was still within its authority to assign the mortgage so long as it did so consistent with its fiduciary duty to IndyMac. *See In re Marron*, 10-45395-MSH, at 9 (MERS does not have to hold promissory note to assign mortgage because it was acting as nominee). Ouch has alleged no facts that could support the contention that MERS breached its fiduciary duties to IndyMac; therefore, the court holds that MERS had the authority to assign the mortgage.

Ouch claims that because the mortgage and the promissory note were separated, any assignment of the mortgage is a "nullity". Massachusetts law on this issue, however, is settled. The holder of a mortgage does not have to be the same entity as the holder of the note. *Ibanez*, 458 Mass. at 652-653; *Lamson &Co.* v. *Abrams*, 305 Mass. 228, 245 (1940) ("The holder of the mortgage and the holder of the note may be different persons."). When the underlying debt is

8

negotiated, the mortgage is not automatically assigned with it; rather, the mortgagee remains the

same but holds legal title in trust for the note holder. *Ibanez*, 858 Mass. at 653.  The argument

that because MERS held no beneficial interest in the debt it could not assign the mortgage is

flawed.  MERS as mortgagee held legal title to the Property in trust for IndyMac Bank and any

subsequent holders of the promissory note. MERS had the authority to assign the mortgage to a

new mortgagee, OneWest, which then became the legal title holder in trust for the current note

holder.

      Finally, the fact that Harmon, the MERS Vice President who assigned the mortgage to

OneWest, was also an attorney at the firm conducting the foreclosure proceedings does not make

the assignment void.  While some courts have expressed misgivings regarding the ease with

which a person may become an officer of MERS with the power to effect mortgage assignments,

the practice has not been deemed illegal. *Aliberti*, 779 F. Supp. 2d at 249 ("Through formal

corporate resolutions, MERS typically authorizes employees of MERS member firms to execute

assignments on its behalf").  But see *In re Agard*, Civil Action No. 810-77338, at 4 (Bankr.

E.D.N.Y. Feb. 2010) (criticizing MERS's business model as designed to skirt the law).  General

Laws Chapter 183, § 58B provides that the assignment of a mortgage

    if executed before a notary public, justice of the peace or other officer entitled by law to
    acknowledge instruments, whether executed within or without the commonwealth, by a
    person purporting to hold the position of ...vice president...of the entity holding such
    mortgage, or otherwise purporting to be an authorized signatory for such an entity, or
    acting under such power of attorney on behalf of such entity, acting in its own capacity or
    as a general partner or co-venturer of the entity holding such mortgage, shall be binding
    upon such entity and shall be entitled to be recorded, and no vote of the entity affirming
    such authority shall be required to permit recording.

The mortgage assignment by MERS to OneWest complied with the statute. Harmon in his capacity as a MERS Vice President validly indorsed the assignment on behalf of MERS and that assignment was signed and sealed by a notary public. Therefore, Ouch's contention that Harmon unlawfully assigned the mortgage is unpersuasive. [2]

       c.  Unity of Possession of Note and Mortgage to Foreclose

Although the plaintiff has failed to state a claim for wrongful foreclosure based on an invalid assignment of the mortgage from MERS to OneWest, there are facts in the Verified Complaint that plausibly suggest a wrongful foreclosure claim due to the failure of the foreclosing entity (OneWest) to have possession of both the mortgage and note at the time of foreclosure. See *Nader*, 372 Mass. at 104 (a complaint should not be dismissed under Rule 12(b)(6) if there are facts alleged which would grant the plaintiff cause for relief even if the legal theory relied on is incorrect).

Whether the foreclosing entity must hold both the mortgage and the note is an unresolved issue in Massachusetts. See *Eaton* v. *Federal Nat'l Mortgage Assoc.*, 2011 Mass. Super. LEXIS 211, slip op. at *4 (June 17, 2011) (McIntyre, J.) (appeal pending) (while the mortgage and note may be held separately, they must be re-united to foreclose); *Adamson* v. *Mortgage Electronic Registration Systems, Inc.*, 2011 Mass. Super. LEXIS 212, slip op. at *23-28 (Oct. 19, 2011) (Brassard, J.) (not requiring the foreclosing party to hold both the note and mortgage could be harmful to the mortgagor); *Culhane*, 2011 U.S. Dist. LEXIS 136112, at *28-39. But see *Valerio*

---

[2] Allusions in plaintiff's memorandum to Harmon's signature being a possible forgery are not considered.

v. *U.S. Bank*, F. Supp. 2d 124, 127-129 (D. Mass. 2010); *In re Marron*, 10-45395-MSH, at *7

(MERS acting as nominee for the lender has the right to foreclose without needing to be a holder

of the note); *Aliberti*, 779 F. Supp. 2d at 249.

This court concurs with the rulings of those courts that have concluded that the

foreclosing party must possess both the mortgage and the note. See *Eaton*, 2011 Mass. Super.

LEXIS, at *4; *Adamson*, 2011 Mass. Super. LEXIS, at *23-28; *Culhane*, 2011 U.S. Dist. LEXIS

136112, at *28-39. Like the cases cited, this court turns to Massachusetts precedent stretching

back to the mid-nineteenth century, namely *Wolcott* v. *Winchester*, 81 Mass. 461 (1860) and

*Crowley* v. *Adams*, 226 Mass. 582 (1917). "In Wolcott, the Supreme Judicial Court held that

'the possession of the debt [is] essential to an effective mortgage, and . . . without it [one cannot]

maintain an action to foreclose the mortgage.' More than fifty years later, the court reiterated in

Crowley that 'possession of the note [is] essential to an enforceable mortgage without which [no]

mortgage could effectively be foreclosed.'" *Culhane*, 2011 U.S. Dist. LEXIS 136112, at *29

(internal citations omitted). The rationale underlying this proposition is that a mortgage is

dependant on the underlying debt and can grant no more than "a mere technical interest" to the

mortgagee. *Wolcott* 81 Mass. at 465; *Eaton*, 2011 Mass. Super. LEXIS 211 at *5. This court

finds here too then, for the reasons stated, that to have validly foreclosed on the plaintiff's

property, the defendant OneWest must have possessed both the mortgage and the promissory

note at the initiation of foreclosure proceedings.

Moreover, as stated, the assignment of a mortgage by MERS does not simultaneously

assign the note because MERS lacks a beneficial interest in the note. *In re Thomas*, 447 B.R. 402, 412 (Bankr. D. Mass., 2011) (foreclosing bank cannot rely on assignment from MERS as evidence that the note was transferred to it as well). In other words, where MERS is the nominee of the lender and not the owner of the underlying debt obligation, it has no power to assign a right to the debt that it does not itself possess. *Id.* Ouch alleges in her complaint that the assignment of her mortgage by MERS to OneWest did not also assign the promissory note, and that OneWest was never a successor or assignee of the lender, IndyMac. These factual allegations and the inferences therefrom, e.g., that OneWest was not the holder of the note at the time of the foreclosure sale, provide sufficient "heft" to withstand the defendants' motion to dismiss. *Sullivan* v. *Chief Justice for Admin. & Mgmt. of the Trial Court*, 448 Mass. 15, 20-21 (2006), quoting Ginther v. Commissioner of Ins., 427 Mass. 319, 322 (1998) ("In reviewing a motion to dismiss under rule 12(b)(1) or (6), 'we accept the factual allegations in the plaintiffs' complaint, as well as any favorable inferences reasonably drawn from them, as true.'").

   b. Count III : Duty of Good Faith and Reasonable Diligence

   Plaintiff's third claim is that the actions of the defendants were in breach of the duty of good faith and reasonable diligence owed to her in the foreclosure proceedings. She claims that this breach resulted in a loss of equity in her home, a lost opportunity to modify or otherwise work out her mortgage delinquency, and the imposition of foreclosure fees and costs.

   A foreclosing mortgagee owes to the mortgagor a duty of good faith and reasonable diligence. *Williams* v. *Resolution GGF Oy*, 417 Mass. 377, 378, 381 (1994) (breach of this duty

12

is a violation of G. L. c. 93A, §§ (2)(a) and 9); *Seppala & Aho Constr. Co.* v. *Petersen*, 373
Mass. 316, 320 (1977); *Ibanez*, 458 Mass. at n.16. "A mortgagee with the power to select the
methods of sale must act as a reasonably prudent man would to obtain a fair price for the
property, and if the conditions announced at the sale are unusual and operate to prevent free
bidding, it is the mortgagee's duty to change them." *Union Market Nat'l Bank of Watertown* v.
*Derderian*, 318 Mass. 578, 582 (1945) (inadequacy in the selling price may, but not necessarily,
indicate a lack of good faith and due diligence). The failure to comply with the duty to exercise
good faith and due diligence will invalidate the foreclosure sale. *Sandler* v. *Silk*, 292 Mass. 493,
496 (1935).

Ouch's claim of breach of the duty of good faith and due diligence is derivative of her
claim for wrongful foreclosure. She asserts that by invalidly assigning the mortgage, the
foreclosure of her property was illegal. In her complaint, Ouch specifically pleads this cause of
action as stemming from an invalid mortgage assignment. The court, however, has already
found that the assignment of the plaintiff's mortgage was proper; therefore, no claim for breach
of duty based on the validity of the assignment can succeed.

While the plaintiff has alleged sufficient facts to support a cause of action for wrongful
foreclosure, the plaintiff has failed to allege facts showing that the defendants breached the duty
of good faith and due diligence. Rather, the plaintiff simply relies on the same set of facts and
concludes that she suffered various monetary damages as a result of the defendants' actions.

Without providing any factual basis as to how the duty was breached or what led to the specific damages she claims to have suffered, Count III of the Verified Complaint alleging breach of the duty of good faith and due diligence must be dismissed.


## **ORDER**

For the foregoing reasons, it is hereby **ORDERED** that the Defendant's Motion to Dismiss is **DENIED** as to Counts I & II and **ALLOWED** as to Count III.


DATED: December 16, 2011

Garry V. Inge
Justice of the Superior Court

14